ELIZABETH G. FAULKNER, as Administratrix, etc., of LESTER B.
FAULKNER, Deceased, Respondent, *v.* ELLEN McNEIL and
Another, Appellants.

*Foreclosure of a bond and mortgage — evidence sufficient to show usury.*

In an action brought to foreclose a mortgage, in order to establish the defense of
usury, a clear preponderance of evidence is required of a corrupt agreement to
give and to receive a greater compensation than at the rate of six per cent per
annum for the forbearance secured by the bond.

If it appears, either on the face of the security, or by evidence *aliunde*, that com-
pensation for such forbearance at a greater than the legal rate was taken or
reserved it is presumed to have been done in pursuance of a corrupt agreement,
but the fact that such compensation was taken or reserved as such, under
whatever the disguise or pretense, must be established by affirmative evidence.

APPEAL by the defendants, Ellen McNeil and another, from a
judgment of the Supreme Court in favor of the plaintiff, entered
in the office of the clerk of the county of Livingston on the 27th
day of June, 1893, upon the report of a referee.

*J. H. Coyne*, for the appellants.

*B. G. Foss*, for the respondent.

DWIGHT, P. J.:

The action is on a bond of the defendants, to the plaintiff's intes-
tate, conditioned for the payment of the sum of $339.62 and inter-
est in two years from the 2d day of April, 1887, of which day it
bore date, and it was acknowledged and delivered on the ninth day
of the same month.

The answer of the defendants admits, by not denying, the execu-
tion and delivery of the bond, but proposes two defenses to the
action : *First.* That the bond was given in exchange for a check of
Ellen McNeil on the First National Bank of Dansville for $325,
which the defendants had given to the intestate nine months before
in payment for a pair of horses, and — on information and belief —
that the intestate had received payment of the check from the
bank, and afterwards repossessed himself of it without its being
canceled ; also, that the intestate was a director of the bank, and —

on information and belief — that the bank was insolvent and the intestate knew it to be so, and that with intent to cheat and defraud the defendants he persuaded them to take back the check and retain the money and give him the bond instead, and that, shortly afterwards, and while the money still remained on deposit in the bank, the bank stopped payment and the money was lost to the defendants.

*Second.* The defense of usury, viz., that the surrender of the check for $325, being the only consideration for the bond, the sum of fourteen dollars and sixty-two cents was corruptly and usuriously included in the latter in addition to the lawful interest reserved thereby for the loan and forbearance of the sum above named. ·

We think the evidence was insufficient to establish either of these defenses. It seems a little doubtful what the first defense is, whether want of consideration for the bond by reason of the fact that the check had been paid by the bank, or fraud in procuring the money to be left with the bank when in failing circumstances. The two theories are plainly inconsistent with each other, and both are negatived by the findings of the referee.

The evidence tending to show that the check had been paid to the intestate was not of a very satisfactory character, and the referee was quite justified in refusing to hold the fact established as against the improbability that the check should afterwards be in the hands of the payee uncanceled, and that the fact should not have been disclosed to the defendants by the state of their bank account. The other and contradictory theory proposed as part of the same defense is answered by evidence that at the time the check was returned the defendants' account at the bank was actually overdrawn, and that the bank did not close its doors until more than four months after that time.

The narrative of the transaction, derived from evidence which is not very satisfactory — the mouths of all the parties being closed — is briefly as follows: About the 1st of July, 1886, the defendants bought a pair of horses from the intestate and gave him the check of Mrs. McNeil therefor for $325. On the first of April following the intestate returned the check to McNeil in front of his place of business, and told him he would come the next day and get the mortgage. The bond in suit with the mortgage which accompanied it as collateral thereto purport to have been executed the next day,

April second, and were acknowledged and delivered April ninth, and the mortgage was duly recorded April seventeenth. This, it would seem, must have been the mortgage referred to by the intestate, which he would come for the next day, and the remark would seem to indicate that the giving and taking of a bond and mortgage in lieu of the check, had been the subject of previous negotiations between the parties.

The defense of usury, we think, equally fails of being established. To establish it required a clear preponderance of evidence of a corrupt agreement to give and to receive a greater compensation than at the rate of six per centum per annum for the forbearance secured by the bond. It is true that if it appeared, either on the face of the security or by evidence *aliunde*, that compensation for such forbearance at a greater than the legal rate was taken or reserved, it would be presumed to have been done in pursuance of a corrupt agreement; but the fact that such compensation was taken or reserved *as such*, under whatever the disguise or pretense, must be established by affirmative evidence. In this case there is nothing to suggest such an arrangement except the fact that the face of the check was $325 and the sum named in the condition of the bond was $339.60, the difference being precisely equal to the interest on the former sum for nine months. But this affords no proof of an usurious agreement except upon the assumption that the sole consideration of the bond was the surrender of the check at its face value, without the allowance of interest thereon, and that the addition of an amount equal to the interest on the check was a device to cover usury. We do not think that this assumption is supported by evidence sufficient to establish the allegation of an usurious agreement.

The fact, already adverted to, that at the time of the surrender of the check Mrs. McNeil's account was overdrawn, and that it had been so for several days, is established by the books of the bank, and is controverted only by the evidence of McNeil, who testifies, broadly, that he knows that Mrs. McNeil's account was always good for the amount of the check from the time it was given to the time it was surrendered. How he was able to say so he does not explain. He does not claim to have had a pass book, or to have seen the books of the bank; nor that he alone drew checks upon that account. The assertion seems too broad without some statement of facts to

justify it. On the other hand, the president and general manager of the bank, who, though a brother of the intestate, was called by the defendants and testified in their behalf, was unable to say that the account was good at any time after the day the check was given until the date of its surrender, and the only books of the bank which could be produced showed that for the last ten days before the check was given up the account was overdrawn. The books of the bank covering all the time preceding the 22d day of March, 1887, were missing. The conclusion seems justified that they had been purloined, and either hidden or destroyed by some person interested in suppressing evidence of the condition of the bank upon the date mentioned. But the defendant's account from the 22d of March, 1887, newly opened in books which did not share the fate of the older ones, was proved, and showed a balance, on the day mentioned, of five dollars and eighty cents on the debit side. How long this condition had existed, or how long, at least, the account was not good for the amount of the check, is not shown; but we think that, upon the whole case as it stands, it may fairly be inferred that the delay to collect the check was due to the fact that the account was not good for it, and that that fact was so understood by the parties at the time the bond was given, and that interest was added to the face value of the check to compensate the intestate, not for the forbearance of the money for the two years to come, but for the use of the money which he had lost for the nine months past. If such was the case, or if it was so understood between the parties at the time the bond was given, even though the fact were otherwise, there was no corrupt agreement, and, consequently, no usury in the transaction.

The view which we suggest is supported by circumstances, and is not excluded by any such preponderance of proof as is required to warrant the conclusion of a corrupt and usurious agreement.

We are of opinion that the referee was justified in disallowing both the defenses interposed by the answer in this case, and we find no exception which points to error in the rulings on the trial.

The judgment should be affirmed.

LEWIS and HAIGHT, JJ., concurred; BRADLEY, J., not sitting.

Judgment appealed from affirmed.